IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BONITA KEGLER,

                      Plaintiff,                  ORDER

v.

                                            12-cv-413-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Bonita Kegler seeks judicial review of a final administrative decision of the Commissioner of Social Security, which affirmed the finding of Administrative Law Judge Sheldon P. Zisook ("ALJ") that Kegler was not disabled within the meaning of the Social Security Act. Kegler principally contends that a remand is warranted because the ALJ failed to address her limitations as to concentration, persistence and pace. For the reasons set forth below, the court agrees and will remand for rehearing.

## FACTS

**A. Background**

On January 28, 2011, the ALJ issued a decision denying Bonita Kegler's application for Disability Insurance Benefits ("DIB"). (AR 27.)[1] Kegler filed a timely request for review of the ALJ's decision. On May 8, 2012, the Appeals Council

---

[1] The cites in this Order are drawn from the Administrative Record (Dkt. #7.)

denied Kegler's request for review making the ALJ's decision the final determination of the Commissioner. (AR 5.) On June 11, 2012, Kegler filed a timely complaint for judicial review in this pursuant to 42 U.S.C. §405(g).

Kegler alleges disability due to anxiety, dependent personality issues, seizures, obesity, hypertension, possible stroke or mini-stroke, and rapid heartbeat. (AR. 30.) Kegler alleges that her anxiety causes her to suffer from headaches, stomach problems and trouble sleeping. (*Id.*) Kegler also claims that she does not handle stress well and dislikes changes in her routine. (*Id.*) Finally, Kegler alleges that she has lost employment in the past due to her inability to keep up with the pace of her workload and constantly feels criticized by supervisors and others. (*Id.*)

### B. Medical Evidence

Kegler's most substantial medical problem is her seizure disorder. Kegler developed seizures after a motor vehicle accident when she was seven years old. Kegler's seizures have been managed by physicians since December 2008.

### C. Treating Physicians

On January 2, 2009, Dr. Stojic at the Marshfiled Clinic reviewed Kegler's electroencephalogram report, and noted that it was, "suggestive of a diagnosis of focal epilepsy arising from the left temporal region as well as focal cortical dysfunction from the same region. (AR 223.) Following a more thorough neurological evaluation, n February 25, 2009, Kegler was determined to have "complex partial seizures with a history of a generalized seizure and encephalomalacia secondary to remote head

trauma." (AR 31.) That same day, Dr. Evan Sandok, Neurologist, formally assessed Kegler as having "Epilepsy, complex partial seizures with history of a single secondary generalized seizure, presumed intractable." (AR 230.)

In the medical records, Dr. Sandok expressed a concern that Kegler might choose to downplay this assessment and not report her seizures. (AR 230.) Dr. Sandok also indicated that he would not sign the DOT form necessary for Kegler to get her driver's license following her most recent seizure. (AR 230.)

On May 3, 2010, Dr. Daniel Kulas of Mercy Milton medical clinic noted Kegler's 20-year history of seizures, and her last seizure had occurred in December 2008. (AR 465.) Dr. Kulas's August 22, 2011, records indicate that he previously provided Kegler with Effexor due to depression and that the prescribed dosage was being increased. (AR 552.) In October 2010, Kegler also began seeing Dr. Sany Khabbaz and was taking Dilantin and Carbamazepine.[2] (AR 440.)

**D. Dr. Richard Hurlbut, Consultative Examiner**

On November 16, 2009, Richard Hurlbut, Ph.D., completed a consultative examination of Kegler. "With respect to specific work capacity issues," he found:

> I believe that Bonita Kegler would have some trouble with even simple instructions, difficulty remembering them and carrying them out effectively. She would have difficulty with supervisors and coworkers. She perceives that she is yelled at a lot. She would have a good deal of difficulty with concentration, attention, and work pace, and difficulty with stress and change. Based on all the available information, I would diagnose Bonita Kegler in the following manner:

---

[2] Dilantin is an anticonvulsant medication which treats seizures. Carbamazepine also treats seizures, as well as nerve pain.

>AXIS I: Anxiety disorder, NOS, with psychosomatic presentation, headaches and nausea.
>AXIS II: Dependent personality issues,
>AXIS Ill: Epilepsy, high blood pressure, high cholesterol, overweight
>AXIS IV: Severe, lost her home, problems with relationships.
>AXIS V: GAF of 45.
>
>I believe that Ms. Kegler's impulsivity and difficulty with decision making would require her to have a payee if benefits are found appropriate.

(AR 301.)

### E. State Agency Assessments

On December 18, 2009, Deborah Pape, Ph.D., completed a Psychiatric Review Technique form ("PRT") and Mental Residual Functional Capacity form ("Mental RFC") for Kegler. (AR 325, 311.) Dr. Pape determined that Kegler suffered from an anxiety-related disorder and a personality disorder. (AR 325.) Dr. Pape also found that Kegler had moderate limitations in the activities of daily living, maintaining social functioning, and limitations in maintaining concentration, persistence and pace. (AR 325.)

On the Mental RFC, Dr. Pape determined that Kegler was also moderately limited in her ability to: understand; remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; work with supervisors and coworkers; and respond appropriately to changes in the work setting. (AR 311-312.)

F.  **Administrative Hearing**

Applying the required five-step analysis,[3] the ALJ found on January 28, 2011, that Kegler had not engaged in substantial gainful activity since December 18, 2008. The ALJ also found that Kegler suffered from the following "severe" impairments: "epilepsy, obesity, anxiety disorder and personality disorder." (AR 28.) In contrast, the ALJ found that Kegler's hypertension and rapid heartbeat/supraventricular tachycardia were "not severe impairments because they are under reasonably good control with medication." (AR 28.)

Notwithstanding Kegler's severe impairments, the ALJ determined that she had the Residual Functional Capacity ("RFC") "to perform medium work, with no climbing ladders, ropes or scaffolds and no exposure to hazardous heights and moving machinery, with the mental capacity for simple, repetitive tasks and occasional contact with supervisors and coworkers." (AR 30.) In reaching this RFC, the ALJ purported to take into consideration the opinion evidence of both Dr. Richard W. Hurlburt, PhD, and [the state agency's reviewing physicians. Regarding Dr. Hurlburt, the ALJ chose not to assign his opinion greater weight "based on the one-time nature of his evaluation, and because his assessed residual functioning capacity was not consistent with the claimant's employment history, her education of 3 years of college, and the claimant's ability to

---

[3] The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

remain active in civic band and church choir, nor is it supported by the greater objective record." (AR 31.)

At the same time, the ALJ chose to give greater weight to the opinion of the State agency's reviewing physicians:

> The opinions of the State agency's reviewing physicians . . . were given greater weight in this decision because their opinions were not inconsistent with the greater objective record, particularly regarding their finding that the claimant could perform medium workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or to respond appropriately to changes in the work setting (Exhibits 4F —6F, 11F —15F).

(AR 30-33.)

At step four, the ALJ determined that Kegler was unable to perform any past work as a nurse's assistant or cashier, respectively. While finding that Kegler may have been physically capable of performing her past relevant work as a cashier, the ALJ concluded her overall mental limitations in social functioning would keep her from engaging in this work. (AR 33.) Turning to step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that that claimant can perform." (AR 33.) Accordingly, the ALJ found that Kegler was *not* "disabled" as defined by the Social Security Act, from December 18, 2008, through the date the ALJ issued his decision. (AR 34.)

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" if supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). An ALJ decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991)); *see also Richards v. Astrue*, 370 F. App'x. 727, 731 (7th Cir. 2010) ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at

437 (stating that "failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence").

Kegler principally contends that remand is warranted because the ALJ failed to: (1) address her mental limitations adequately regarding concentration, persistence and pace; and (2) weigh the evidence proffered by Dr. Richard Hurlbut properly.[4]  Because the court finds that the ALJ's decision is deficient regarding both issues, the court will remand this case for further consideration.

## I.  Mental Limitations Not Properly Accounted for in the ALJ's Decision

Kegler contends the ALJ's finding of *mild* limitations in concentration, persistence and pace ("CPP") lacks support in this record.  The court agrees.  Specifically, the ALJ's finding -- that Kegler has mild difficulties "with regard to concentration, persistence or pace" -- lacks any citation to the record.  (AR 29.)

This deficiency is telling because an ALJ decision cannot stand if it lacks evidentiary support.  *Steele*, 290 F.3d at 940.  Nor may an ALJ simply fabricate his own medical findings as to a claimant's abilities and limitations.  By not explaining his findings as to CPP, the ALJ here improperly substituted his own medical judgment for that of medical evidence in this record -- a deficiency warranting remand.  *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.1996)(stating that "ALJs must not succumb to the

---

[4] Bound within the first issue is the related question as to whether the ALJ must consult a vocational expert to provide information as to the remaining job base. *Boone v. Astrue*, 2011 WL 711071 *7 (S.D.Ill.February 22, 2011)("If a claimant has nonexertional limitations which restrict him from a full range of work, the ALJ must obtain the testimony of a vocational expert.").

temptation to play doctor and make their own independent medical findings"); *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Rohan*, 98 F.3d at 968; 20 C.F.R. § 404.1527(d)(2).

Not only did this ALJ make findings with respect to Kegler's limitations as to CPP without evidentiary support, substantial evidence in the record points to its severity. Dr. Pape's opinion, for example, states that Kegler had "moderate limitations in her ability to maintain attention and concentration for extended periods." (AR 32.) Dr. Pape also found that she had moderate limitations "to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id*.) The latter finding is particularly noteworthy because the ALJ otherwise found that Pape's opinion should be afforded "great weight" because it was more consistent with the "greater objective record." (*Id*.)

Of course, this begs an obvious question: how can the ALJ make findings of *mild* restriction(s) with respect to CPP in the face of uncontradicted, credible evidence in the record indicating a different result -- *moderate* limitation(s) -- which, at least on a facial level, is more supportive of Kegler's disability claim. This inconsistency must be addressed on remand. S*ee Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994) (stating an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review").

Because reconsideration of the inconsistency in the ALJ's CPP finding could alter other findings relevant to the RFC determination, the court is reticent to address Kegler's ancillary challenge with respect to non-exertional limitations (*i.e.*, that an ALJ must consult a vocational expert to provide information as to the remaining job base when non-exertional limitations are found). *See Boone v. Astrue*, 2011 WL 711071 *7

9

(S.D.Ill.February 22, 2011)(stating that "[i]f a claimant has nonexertional limitations which restrict him from a full range of work, the ALJ must obtain the testimony of a vocational expert").

Notwithstanding this, the court will provide some guidance.  Upon remand, the ALJ must: (1) properly address the apparent record inconsistencies between his *mild* CPP findings and the evidence reviewed above; and (2) formulate an RFC generally consistent with substantial evidence in the record.  Once these steps are taken, the ALJ should then consider whether a vocational expert is required to assist at step five in the evaluation process.  Since there are non-exertional limitations already stated in the RFC determination -- and substantial evidence in the record tends to point towards moderate CPP limitations (Dr. Pape's assessment) -- there would seem to be at least some need to require the services of a vocational expert.  The court, however, will leave the actual adjudication to the ALJ's discretion.

## II. Dr. Richard Hurlbut's Evidence

Kegler also contends that the ALJ did not properly evaluate Dr. Hurlbut's medical opinion in accordance with the factors set out in 20 C.F.R. § 404.1527(c).[5]  However,

---

[5] Kegler makes several additional arguments regarding the medical opinions in this case that are effectively subsumed within the multi-factor analysis and need not be addressed separately, since the regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive" using the following factors: (1) the examining relationship, with more weight accorded to a physician who has examined the claimant than one who has not; (2) the treatment relationship, including the length of treatment of the claimant, the frequency of examination, and the nature and extent of the treatment relationship; (3) the support of the physician's opinion afforded by the medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician, with more weight accorded to a specialist than to a non-specialist; and (6) other factors, including the amount of understanding of the Commissioner's disability programs and their evidentiary requirements, and the extent to which an acceptable medical source is familiar with the other information in the case record. *See* 20 C.F.R. § 404.1527(c).

there would appear little wrong with the Commissioner's rebuttal on this issue. Several of the factors in the regulations have been addressed by the ALJ -- including factors going to Dr. Hurlbutt's treatment relationship with Kegler (including the nature and frequency of that relationship). (AR 32.) For the most part, the court finds that the ALJ provided the minimal amount of articulation to safeguard this issue from remand. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Given what the court has found above regarding moderate limitations in CPP, there is in any event a need for the ALJ to reconsider Dr. Hurlbut's medical evidence in light of evidence that it is consistent *with the record as a whole*. The court finds this factor is significant enough for further consideration because Dr. Hurlbutt states that Kegler "would have a good deal of difficulty with *concentration, attention and work pace*." (AR 301.) Indeed, this evidence would seem to be consistent with Dr. Pape's evidence recognizing moderate limitations in the CPP which would be relevant to the multifactor analysis in 20 C.F.R. § 404.1527(c).

But before the ALJ can get to this analysis on remand, he must first reconcile Dr. Pape's evidence (recognizing moderate limitation in CPP at AR 32) with the ALJ findings that Kegler only had mild restrictions. (AR 29.) Since this deficiency has been addressed earlier in the opinion, it will not be addressed again here. As such, and with respect to Dr. Hurlbut's evidence, remand is required consistent with what has been stated in this opinion.

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Bonita Kegler's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 11th day of September, 2014.

            BY THE COURT:

            /s/

            _____
            WILLIAM M. CONLEY
            District Judge